SKEEL, J.
Dissenting.
On August 18, 1937, Alexandria Carotis, mother of plaintiff appellee, applied in writing for a policy *387 of insurance in the face value of One Thousand Dollars. The application was made at the solicitation of one of the defendant’s agents. Three of the questions set forth in the application were not answered, but it was expected that the agent would call upon the deceased at a later date to get the balance of the information needed to finish the application, or that he would procure it from other applications for industrial policies which this deceased had purchased from the defendant.
At the time the application was signed by Mrs. Carotis, the agent collected the first year’s premium amounting to $97.50, by means of a check which was turned in to the company at its branch office in Cleveland, Ohio, at the end of the day’s work and the cashier of the branch office deposited it on the following day to the company’s local account.
The application which was not completed at the time it was signed was then held by the agent. He started on his vacation and was gone for two weeks, keeping the application with him. It was never filed with the company but when the agent returned from his vacation he went back to call on Alexandria Carotis for the purpose of completing the application, only to find that in the meantime she had died.
The application is made up of •two parts. First, “Statement to be made by applicant” and second, “Medical Inspection Report” which 'is on the reverse side from the place provided for the applicant’s statement. The information which was not set forth in the applicant’s statement was the applicant’s date of birth and the applicant’s state of health and that of members of her immediate family.
The space provided for these answers were blank. It is also disclosed that no medical examination was made so that that part of the application is entirely blank.
The application in part, provides:
“IT IS UNDERSTOOD AND AGREED THAT: A. That the foregoing statements and answers which I have made in this application as a basis for the contract of insurance, are complete, true and correctly recorded. B. That if payment of the premium above stated has been made with this application the insurance (subject to the terms and conditions of any policy issued hereunder) if the application is approved at the Home Office of the Company, shall be in force from the date of the completion of this application privided that the Company shall be satisfied that on said date I was insurable in accordance with its rules for the amount and on the plan applied for without modification; that if payment of the premium has not been made with this application, any policy which may be issued hereon shall take effect only if I have not consulted or been treated by a physician since the date of this application, and then only in the event that it shall be delivered to and actually received by me, and the first premium or installment thereof actually paid while I am alive and in sound health, and that whether the premium is paid with the application, or otherwise, delivery and payment shall constitute an acceptance of the policy and of all its conditions. C. That a receipt on the form attached hereto is the only receipt the agent is authorized to give for any payment made before delivery of the policy; that only the President, a Vice President, the. Secretary or an Assistant *388 Secretary can make, modify or discharge contracts or waive any of the Company’s rights or requirements; that notice to or knowledge of the soliciting agent, or the medical examiner,'or any other person, whenever given or acquired, is not notice to or knowledge of the Company and that neither such agent nor medical examiner is authorized to accept risks or to pass upon insurability. D. That if errors or omissions are discovered by the Company in this application, the Company is authorized to amend this application by noting the change in the space above entitled, “Corrections and Amendments” and I hereby agree that my acceptance of any contract issued on this application so amended shall constitute a ratification by me of such changes or amendments, but no change shall be made as to amount, classification, plan of insurance or benefits, unless agreed to in writing by me. E. I expressly waive on behalf of myself and of any person who shall have or claim any interest in any polcy issued hereunto all provisions of law forbidding any physician or other person whom I have consulted or may hereafter consult, or by whom I have heretofore or may hereafter be attended or treated, from disclosing, in court or elsewhere, any knowledge •or information which he thereby acquired. F. That if within sixty days from the date of this application it is not approved as aforesaid, or, if the Company does not give notice of action thereon, the application shall be deemed as declined.”
The witnesses who testified for the plaintiff both claim that the insurance agent waived the necessity for a medical examination, and that the policy was to be given immediately if she ’paid the premium. But the record clearly discloses that the agent had no authority to waive any of the company’s “requirements”. The rights of the parties cannot, therefore, be affected by any attempted waiver of the company’s requirements on the part of the agent.
An examination of the application further discloses that where premiums were paid in advance or. remitted with the application, that the insurance “(subject to the conditions of the policy) if the application is approved at the Home Office of the Company, shall be in force from the date of the completion of this application.”
The application never reached the Home Office and, as above stated, was never completed in several respects. How is it possible therefore to fix liability upon the company until there is a binding’ contract between the parties? Can it be said that the mere receiving payment in advance is sufficient without more to fix the company’s liability even though they have never received a completed application, or had the opportunity to approve or disapprove it at the Home Office in the manner provided for on the face of the application? To so hold is to enforce contractual obligations upon one of the parties where by the plain terms of the application no binding obligation has yet been established.
The facts of this case are to be distinguished from those in Duncan v Insurance Company, 137 Oh St 441. In that case a “binder receipt” was given upon which the plaintiff relied. The receipt provided in part:
“Received ______Dollars in connection with an application for insurance made on this date, subject to the following conditions. It *389 is understood and agreed that no liability is assumed by the company on account of this payment nor until it shall issue a policy, but if death occurs after the date of the application from which this receipt is detached, and prior to a policy payment in accordance with and subject to the conditions and provisions of the policy applied for shall be made; provided the applicant is insurable under company’s rules and the application is approved and accepted by at its Home Office as to plan, ^.premiums and amount of insurance.”
The Supreme Court, in effect, said that because the terms of the “binder receipt” were not only ambiguous but in a sense contradictory, so that in giving effect to its provisions, it should not be interpreted so as to destroy that part most favorable to the insured in order to retain the part most favorable to the insurer and creator of the receipt.
The terms of any receipt given for the premium in the instant case, if in fact such receipt was given, are not in the record, so we must look to the provisions of the application, which, as quoted, in part, provided:
“That if payment of the premium above stated has been made with the application, the insurance (subject to the terms of the policy issued hereunder), if the application is approved at the Home Office of the Company, shall be in force from the date of the completion of this application provided the company shall be satisfied that' on said date I was insurable in accordance with its rules for the amount and on the plan applied for without modification.”
Here the terms of the application are neither ambiguous or contradictory. Approval by the Home Office of a completed application is clearly a condition precedent ta any liability under the policy and neither provision being admittedly complied with, the plaintiff’s case must fail.